UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CORNING CORPORATION and
HEMLOCK SEMICONDUCTOR
CORPORATION,

       Plaintiffs/Counter Defendants,

v.

       Case Number 11-10008-BC
       Honorable Thomas L. Ludington

JIE XIAO, a/k/a Georg Xiao, LXENG,
LLC, and LXE SOLAR, INC.,

       Defendants/Third-Party & Counter Claimants,

v.

KATHY LITTLE, individually and as Personal
Representative of the Estate of Michael Little,

       Third-Party Defendants.
_____ /

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR A PROTECTIVE
ORDER AND SCHEDULING STATUS CONFERENCE**

Plaintiffs Dow Corning Corporation and Hemlock Semiconductor Corporation allege that Defendants Jie (George) Xiao, LXEng LLC, and LXE Solar, Inc., stole Dow Corning's trade secrets and misused its trademarks in an effort to lure customers away from Plaintiffs' trichlorosilane ("TCS") and polysilicon businesses. Plaintiffs filed a seven-count complaint on January 3, 2011, alleging claims for misappropriation of trade secrets under Michigan law; trademark infringement in violation of the Lanham Act; false advertising, false representations, and unfair competition in violation of the Lanham Act; trademark dilution in violation of the Lanham Act; unfair competition in violation of Michigan law; violations of the Michigan Uniform Trade Practices Act; and tortious interference with a contract in violation of Michigan law.

Defendants filed a motion to dismiss on January 26, 2011, contending that Plaintiff's federal claims did not state a claim for relief under the Lanham Act. Fed. R. Civ. P. 12(b)(6). Defendants further contended that Plaintiffs' state claims should be dismissed for lack of jurisdiction or on their merits. On May 20, 2011, the Court issued an opinion and order granting in part and denying in part Defendants' motion to dismiss. Plaintiffs' trademark infringement claim, trademark dilution claim, and Michigan Consumer Protection Act claim were dismissed.

On June 3, 2011, Defendants filed an answer to Plaintiffs' complaint, a counter claim, and a third-party claim naming Xiao's former partner Michael Little's Estate, and Little's former wife, Kathy Little. Defendants allege a tort claim against Plaintiffs for invasion of privacy and the third-party claim against Little seeks indemnification.

On May 25, 2011, Defendants filed a motion for a protective order, requesting that the Court bar discovery of documents from the Federal Bureau of Investigation that were used during a grand jury investigation. Plaintiffs filed a response on June 13, 2011, contending that they are entitled to the documents. Defendants filed a reply on June 23, 2011. On the July 14, 2011 hearing date, the Court elected to hold a status conference to discuss discovery issues more broadly. The hearing was canceled based on the Court's determination that it was not necessary to resolve the issues raised in the motion for a protective order. E.D. Mich. L.R. 7.1(f)(2). For the reasons explained below, the motion for a protective order will be denied.

## I.

A detailed discussion of the complaint is contained in the Court's May 20, 2011 opinion and order granting in part and denying in part Defendants' motion to dismiss. *See Dow Corning Corp. v. Xiao*, No. 11-10008-BC, 2011 WL 2015517 (E.D. Mich. May 20, 2011). That discussion will not

be repeated here. Rather, the Court will focus on the key facts relevant to the resolution of this motion and the other discovery issues.

After Michael Little died, Plaintiffs contend that Xiao traveled to Michigan to attend Little's funeral and to attempt to gain possession of Little's laptop computer. Xiao was unable to gain control of the laptop. It is now in the possession of the FBI, and the parties agree that its contents will be important to discovery in this case.

Shortly after Little died, Xiao formed a new entity, Defendant LXE Solar, in Nevis, and he opened a bank account for the entity in the Republic of Seychelles. Plaintiffs contend that he formed the new entity in part to insulate himself from liability to Little's Estate and Plaintiffs. There is an ongoing arbitration proceeding in New York concerning the division of LXEng's assets between Xiao and Little's Estate.

At some point after LXE Solar was established, The Republic of Seychelles seized control of the Barclays bank account opened by LXE Solar. The Republic of Seychelles allegedly seized the account because of concerns about fraudulent business activities. The seizure, although apparently short lived, led a grand jury in Florida to initiate an investigation into Defendants' business practices. As part of that investigation, the FBI showed a number of documents to Plaintiffs and asked Plaintiffs to review the documents to determine if Defendants had access to Plaintiffs proprietary technology. It is not clear from the record how Plaintiffs responded to the FBI, but the inquiry ultimately led to this lawsuit. The pending motion for a protective order asks, essentially, for the Court to quash the subpoena to the FBI.

**II.**

On May 18, 2011, Plaintiffs' issued a subpoena to the FBI through the United States District

Court for the District of Columbia seeking

    (1)    Any and all non-privileged documents in the possession of the Federal Bureau of Investigation ("FBI") relating to Michael D. Little, Jie (George) Xiao, LXEng LLC, and/or LXE Solar, Inc.

    (2)    Any and all documents (including, but not limited to, email, photographs, contracts, solicitations, advertisements, spreadsheets, presentations, and any other electronic files) obtained from Mr. Little's laptop.

    (3)    Any and all documents obtained from the Republic of the Seychelles relating to Michael D. Little, Jie (George) Xiao, LXEng LLC, and/or LXE Solar, Inc.

[Dkt. # 39-3].

Defendants object to the third-party subpoena on two fronts. First, Defendants contend that Plaintiffs' request will reveal proprietary information, including Defendants' trade secrets. Defendants contend such a request is premature. In a misappropriation of trade secrets case, the plaintiff must first provide the defendant with a detailed disclosure of the trade secrets alleged to have been misappropriated before the plaintiff can seek access to the defendant's trade secrets. *See, e.g.*, *Dura Global Techs., Inc. v. Magna Donnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *2 (E.D. Mich. Dec. 6, 2007) ("[P]laintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." (quoting *Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (alteration in original) (additional citations omitted)). Second, Defendants contend that the material sought by Plaintiffs is "grand jury material" under Federal Rule of Criminal Procedure 6, and that Plaintiffs have not demonstrated a "compelling necessity" for discovery of the material as the rule requires. Fed. R. Crim. P. 6(e)(3)(E); *Federal Deposit Ins. Corp. v. Ernst & Whinney*, 921 F.3d 83, 86 (6th Cir. 1990).

**A.**

The Court will first address the propriety of the subpoena under the Federal Rules of Criminal Procedure. Rule 6(e) provides that attorneys for the government and "any other government personnel . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law" may not disclose matters that occur before a grand jury. Fed. R. Crim. P. 6(e)(2)(B) & 6(e)(3). Defendants contend that the documents sought by Plaintiff constitute "matters occurring before the grand jury" and consequently those documents may not be disclosed to Plaintiffs by the FBI. Fed. R. Crim. P. 6(e)(2)(B).

As an initial matter, Plaintiffs contend that the motion for a protective order should be denied because Defendants lack standing to object to the FBI subpoena. "Although a party to a lawsuit typically has no standing to object to a subpoena directed at a non-party, standing exists when the party claims a privilege or other personal interest in regard to the requested documents." *Iron Workers' Local 25 Pension Fund v. Watson Wyatt & Co.*, Nos. 04-cv-40243, 07-cv-12368, 2009 WL 648503, at *6 (E.D. Mich. Mar. 10, 2009) (citing *Langford v. Chrysler Motor Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *City of Ecorse v. U.S. Steel*, No. 07-cv-12131, 2007 WL 4239263, at *2 (E.D. Mich. Dec. 3, 2007); *United States v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006)). Here, Defendants have a significant interest in the documents, to the extent they are grand jury materials, because Defendants are alleged to be the targets of the grand jury investigation. As such, Defendant's have standing to challenge the subpoena to the extent it seeks grand jury materials related to an investigation targeting one or more of the Defendants. *See* Fed. R. Crim. P. 6(e)(3)(F)(ii) (noting that in most circumstances a party to a grand jury proceeding must receive notice before a court will order disclosure of "a matter occurring before the grand jury"); *In re*

*Grand Jury Proceedings*, 851 F.2d 860, 866–67 (6th Cir. 1988) (noting that one of the purposes of secrecy in a grand jury proceeding is to protect the interests of the accused who may be later exonerated).

Turning to Defendants' argument that the Court should bar discovery from the FBI of the documents and electronically stored information considered by the grand jury, it appears that a protective order from this Court is unnecessary, at least at this time. First, as Plaintiffs emphasize, Rule 6(e) is concerned only with protecting "matter[s] occurring before the grand jury." The extent to which a business record that has been subpoenaed by a grand jury is a "matter occurring before the grand jury" depends on context, including the reason the grand jury requested the document and the coercive power, if any, the grand jury used to obtain it. *In re Grand Jury Proceedings*, 851 F.2d at 867. If Michael Little's Estate voluntarily provided the laptop to the grand jury, for example, its contents may not be "matter[s] occurring before the grand jury" under Rule 6(e). Thus, without more information about the documents in the FBI's possession, where they came from, and how they were acquired by the FBI, it is not clear at this point whether Rule 6(e) is implicated at all.

Second, to the extent Rule 6(e) is implicated, the FBI has an affirmative duty not to disclose the documents. Under Rule 6(e), government attorneys and other personnel "must not disclose a matter occurring before the grand jury." That is, without a court order mandating disclosure, Fed. R. Crim. P. 6(e)(3)(E), the FBI is prohibited from disclosing matters occurring before the grand jury, subject to certain exceptions that are not applicable here. There is no need for a court order prohibiting disclosure of documents that the FBI is already prohibited by Rule 6(e) from disclosing.

Finally, approximately three weeks after Defendants filed their motion for a protective order—and ten days after the deadline imposed by Plaintiffs for the FBI to respond to the

subpoena—the FBI provided a letter to Plaintiffs outlining the reasons that the FBI does not intend to respond to the subpoena. Among those reasons, the FBI explained that

> the disclosure of FBI records and information in administrative or judicial proceedings is controlled by statute and regulation. In order for the FBI to disclose records or information, the requestor must provide the FBI with a jurisdictionally valid subpoena, order, or demand, a summary of the information sought, and its relevance to the proceedings as described in Title 28, Code of Federal Regulations, Sections 16.21–16.29. Since you have not provided this office with sufficient information to properly evaluate your request, we are not authorized to produce any FBI information in connection with this matter.

[Dkt. # 39-A] (citation omitted). Thus, it appears the FBI is aware of its obligations and does not intend to disclose any information it is not authorized to disclose.

**B.**

Defendants next contend that Plaintiffs will gain valuable information about Defendants trade secrets from the documents Plaintiffs are seeking from the FBI. Defendants further argue, quite correctly, that the plaintiff in a trade secret case may not be entitled to discover information about the defendant's trade secrets until the plaintiff has identified precisely which of its trade secrets the defendant is alleged to have stolen. That is, a plaintiff may not use a civil action for misappropriation of trade secrets as a fishing expedition to discover information about a competitor's trade secrets. *See Iron Workers' Local 25 Pension Fund*, 2009 WL 648503, at *6 (citations omitted); *see also Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Failure to identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim.").

At the July 14, status conference, Plaintiffs agreed that they have an obligation to, and will, identify with specificity the nature and identity of the trade secrets Defendants have allegedly stolen. Similarly, at some point Defendants are going to have to identify with some specificity the

technology they possess and are marketing to businesses around the world so that the Court, and potentially the jury, can compare Defendants technology to the trade secrets allegedly stolen from Plaintiffs.

Despite the necessity for disclosure of confidential proprietary information, both parties are understandably reluctant to disclose trade secrets that would presumably be very valuable to the opposing party. Thus, at the July 14 status conference the Court discussed with them the best way to proceed, including the necessity of a stipulated confidentiality agreement. Those discussions will continue on September 20, 2011 with the goal of making the discovery process as efficient as possible, without exposing either side to unnecessary risks. At this time, however, Defendants have not demonstrated that the entry of a protective order is necessary.

### III.

Accordingly, it is **ORDERED** that Defendants motion for a protective order [Dkt. # 34] is **DENIED**.

It is further **ORDERED** that a continued status conference regarding discovery issues will be held on **September 20, 2011 at 3:00 p.m.** Counsel for all parties, included the Third-Party Defendants, should be in attendance.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 4, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 4, 2011.

        s/Tracy A. Jacobs
        TRACY A. JACOBS