UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CORNING CORPORATION and
HEMLOCK SEMICONDUCTOR
CORPORATION,

   Plaintiffs,

               Case Number 11-10008-BC
v.               Honorable Thomas L. Ludington

JIE XIAO, a/k/a Georg Xiao, LXENG,
LLC, and LXE SOLAR, INC.,
_____/

**OPINION AND ORDER GRANTING
PLAINTIFFS' MOTION TO COMPEL AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL**

  This civil action arises out of claims brought by Plaintiffs Dow Corning Corp. and Hemlock Semiconductor Corp. alleging that Defendants Jie Xiao, LXEng LLC, and LXE Solar, Inc., violated federal and state laws in their efforts to lure customers away from Plaintiffs' trichlorosilane and polysilicon businesses.  Now pending are cross-motions to compel filed by Plaintiffs and Defendants.  ECF Nos. 69, 72.

  Plaintiffs seek to compel production of aerial photographs taken of Plaintiffs' facilities, production of a laptop of LXEng's deceased co-owner, responses to document requests relating to their trade secrets, and responses to interrogatories relating to Defendants' business practices. Defendants seek to compel responses to interrogatories regarding Plaintiffs' asserted trade secrets, disclosure of communications between Plaintiffs and the FBI regarding the Defendants, and disclosure of notes and memoranda Plaintiffs' made regarding their communications with the FBI.  Plaintiffs' motion will be granted.  Defendants' motion will be granted in part and denied in part.

## I.

Dow Corning Corp. manufactures silicon products, including trichlorosilane. It entered the polycrystalline silicon industry more than fifty years ago and has devoted substantial resources to develop its brand of polycrystalline silicon. Pls.' Compl. ¶¶ 12–17. In 1960, Dow Corning selected Hemlock, Michigan as the site for its polysilicon plant, forming Hemlock Semiconductor in 1979. *Id.* ¶ 19. Hemlock Semiconductor now manufactures polysilicon using Dow Corning's trichlorosilane; Dow Corning remains the majority shareholder of Hemlock Semiconductor. *Id.* ¶ 4.

Michael Little was employed by Dow Corning for twenty five years as a chemical engineer. *Id.* ¶ 25. While employed by Dow Corning, Mr. Little was involved in the manufacture of both trichlorosilane and polysilicon. *Id.* Indeed, for a period of time, Mr. Little served as the leader of Dow Corning's trichlorosilane production facility in Midland, Michigan. *Id.* Mr. Little signed several contracts promising, inter alia, not to disclose "any trade secret, confidential know-how or confidential business or technical information of Dow Corning." *Id.* ¶ 26.

In May 2002, Mr. Little left Dow Corning. *Id.* ¶ 25. In 2007, Dr. Xiao and Mr. Little formed LXEng, a limited liability company formed under the laws of Nevada. Pls.' Compl. ¶¶ 5–6. Each gentleman owned a fifty-percent stake LXEng. *Id.* Although both gentlemen were chemists, only Mr. Little had expertise in the trichlorosilane and polysilicon industries — Dr. Xiao, before joining LXEng, worked in the pharmaceutical industry. *Id.* ¶ 29.

Shortly after LXEng was formed, Dow Corning alleges, it secured contracts worth as much as $18.4 million to provide trichlorosilane and polysilicon technology to two companies. *Id.* ¶ 33. LXEng also entered into negotiations with two additional companies for additional

contracts worth as much as $12 million. *Id.* ¶ 34. During the course of negotiations with these companies, Plaintiffs allege, Mr. Little and Dr. Xiao disclosed Plaintiffs' trade secrets to Defendants' customers, including the specifications and characteristics of Dow Corning's fluid bed reactors. *Id.* ¶¶ 35–36. Plaintiffs further allege that Mr. Little, who was also a pilot and photographer, conducted aerial surveillance of Plaintiffs' manufacturing facilities in Michigan and used that information to explain the processes to LXEng's prospective clients. *Id.* ¶ 37.

Mr. Little died unexpectedly in November 2007, when the single-engine plane he was flying crashed near Gladwin, Michigan. Pls.' Compl. ¶ 39. Dr. Xiao and LXEng then placed advertisements in Michigan publications seeking to hire Plaintiffs' employees with expertise in the trichlorosilane and polysilicon industries; they also directly contacted Plaintiffs' employees with similar expertise. *Id.* ¶¶ 42–43.

In March 2008, Dow Corning's counsel wrote a letter to LXEng, expressing concern that Mr. Little may have shared Dow Corning's trade secrets with LXEng and its customers and emphasizing Dow Corning's intent to "protect its trade secrets and other intellectual property rights." *Id*. ¶ 41. Dow Corning asked LXEng to consent to an independent inspection of a laptop computer that was used by Mr. Little before his death. *Id.* The request was refused. *Id.*

Around this time, Dr. Xiao was approached by Woongjin Polysilicon Co., Ltd. *See* Defs.' Third-Party Compl. ¶ 7, ECF No. 35. "To keep this new contract free of any possible liabilities of LXEng caused by Michael Little," *id*., on July 9, 2008, Dr. Xiao formed LXE Solar in the Caribbean nation of Nevis, placing the new company's assets in a bank account in the Republic of Seychelles. *Id.* ¶ 7; *see also* Pls.' Compl. ¶ 52. Dr. Xiao is the only shareholder of LXE Solar. On August 7, 2008, less than a month after LXE Solar's formation, it secured a $10 million contract with Woongjin.

The government of Seychelles then froze the LXE Solar account and alerted U.S. authorities. Defs.' Third-Party Compl. ¶¶ 7, 12. The FBI began a criminal investigation and a grand jury empanelled in the Southern District of Florida issued subpoenas for documents and electronic information held by Defendants. *Id*. ¶ 12. Sometime later, the FBI contacted Dow Corning and invited them to view the documents suspected of containing Dow Corning's trade secrets. *Id*. ¶ 15. Eventually, the Seychelles account was released. *Id*. ¶ 11. The grand jury has not indicted Dr. Xiao, LXEng, or LXE Solar. *Id*. ¶ 13.

On January 3, 2011, Plaintiffs filed suit against Defendants. After Defendants' motion to dismiss the complaint was denied in part, Defendants filed a counterclaim against Plaintiffs and a third-party complaint against Mrs. Little, individually and in her capacity as the personal representative of her late husband's estate. *See* Defs.' Answer, Countercl., Third-Party Compl., ECF No. 35. The Court issued an opinion and order dismissing the counterclaim and third-party complaint. ECF No. 63.

In August 2011, a stipulated protective order was entered. Protective Order, ECF No. 60. It permits the parties to designate as "confidential" any disclosure that the party "believes in good faith to contain competitively sensitive, proprietary, or confidential business information." *Id*. at 3. Additionally, a party may designate as "attorneys' eyes only" a disclosure that the party "believes in good faith to contain highly sensitive trade secret, technical, financial, business or personal information, the disclosure of which is likely to cause harm to an individual or to the business or competitive position of the Party." Id.

The parties now each move to compel the other's response to discovery requests. The principal dispute in both motions regards the aerial photographs Mr. Little took of Plaintiffs'

-4-

facilities prior to his untimely death and Plaintiffs' assertion that these photographs contain trade secrets. Each motion is considered in turn.

## II.

Plaintiffs seek to compel disclosure of three categories of information. First, they seek production of the aerial photographs Mr. Little took of Plaintiffs' facilities. Next, Plaintiffs seek full responses to document requests relating to their trade secrets and interrogatories relating to Defendants' business practices. Finally, Plaintiffs seek to compel disclosure of the contents of Mr. Little's laptop.

### A.

Plaintiffs first seek the aerial photographs Mr. Little took of Plaintiffs' facilities. As a general matter, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In the specific context of trade secret cases, however, a different standard applies, but only if both parties' potential secrets are implicated. In *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, No. 07-cv-10945, 2008 WL 2064516 (E.D. Mich. May 14, 2008), Magistrate Judge Majzoub explained: "[I]n trade secret cases the party alleging that a misappropriation has occurred, in this case Plaintiffs, are normally required first to identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed to compel discovery of its adversary's trade secrets." *Id*. at *1.

This standard will be satisfied, Judge Majzoub noted, when "the adversary party is put on notice of the nature of the claims and [such] that the party can discern the relevancy of any requested discovery on its trade secrets." *Id*. at 2 (citing *DeRubeis v. Witten Tech., Inc.*, 244

-5-

F.R.D. 676, 681 (N.D. Ga. 2007)). Thus, the "reasonable particularity" standard is not a generalized notice requirement, but rather a specific requirement designed to reduce the ability of a plaintiff to use a claim of trade secret misappropriation as a pretext for discovering a defendant's own trade secrets. In *Dura*, Judge Mazjoub found that the plaintiffs had not articulated their trade secret claims with reasonable particularity and therefore ruled:

> [T]he Court will not yet compel Defendant to respond to Plaintiffs' discovery which requires disclosure of its own trade secrets. However, this is not a grant of immunity to Defendant for all discovery requests. . . . To the extent that Plaintiffs' discovery requests do not require disclosure of Defendant's trade secrets, Defendant should properly respond, or supplement its responses already served, pursuant to the Rules of Civil Procedure.

*Id*. at 3. Citing *Dura*, Defendants reason: "Similarly here, Plaintiffs' general references to the 'location' of its processes in labeled aerial photographs do not suffice. Plaintiffs' identification of the actual photographs does not add any particularity regarding any possible trade secret that the photographs may reflect." Defs.' Reply Br. Supp. Defs.' Mot. Compel & Opp'n Pls.' Mot. Compel 2, ECF No. 83 ("Defs.' Reply & Opp'n"). Defendants' argument is unpersuasive.

The information sought — the aerial photographs of Plaintiffs' facility — does not require disclosure of Defendants' trade secrets. Indeed, Defendants concede as much. *See* Defs.' Mot. 6 ("[Plaintiffs] are obligated to identify with specificity the precise elements of the labeled photographs that constitute trade secrets. They are Plaintiffs' trade secrets.").

Accordingly, the question before the Court is not whether Plaintiffs have articulated their trade secrets with sufficient particularity to ameliorate the risk of unnecessary disclosure of Defendants' own secrets. That is, because Defendants concede that their trade secrets are not implicated by this request, Plaintiffs need not articulate the basis of their trade secret claim with "reasonable particularity" in order to demand a response to their request. Rather, Plaintiffs need

only establish that the information is reasonably likely to lead to the discovery of admissible evidence. Plaintiffs meet this liberal relevancy standard.

The photographs, although perhaps not direct evidence of misappropriation of trade secrets, may be circumstantial evidence of Defendants' interest in Plaintiffs' processes. Likewise, even if not ultimately introduced as evidence at trial, these photographs are reasonably calculated to the discovery of admissible evidence. For example, as Plaintiffs observe, the photographs may be used during "depositions [of] Dr. Xiao and defendants' customers to ascertain exactly what Dr. Xiao and Mr. Little communicated during the presentations and why the customers were interested in the photographs." Pls.' Reply Br. 3, ECF No. 81 ("Pls.' Reply"). Thus, Plaintiffs are entitled to production of the photographs.

**B.**

Plaintiffs next seek to compel full responses to the document requests relating to their trade secrets and the interrogatories relating to Defendants' business practices.

**1.**

Regarding the contested document discovery, Plaintiffs request that the Defendants produce:

- "Any and all documents concerning fluid bed reactors."
- "Any and all documents concerning, containing, or consisting of photographs, videos, or other audio or visual representations of Plaintiffs' plants or facilities."
- "Any and all documents concerning Defendants' allegation that Plaintiffs' specifications and characteristics for Dow Corning's fluid bed reactors used in the production of trichlorosilane are in the public domain and are not entitled to trade secret protection."
- "Any and all documents concerning Defendants' allegation that the location, structure, layout, arrangement, or purposes of Plaintiffs' plants or facilities are in the public domain and are not entitled to trade secret protection."

Pls.' Br. Supp. Mot. Compel 2–3, ECF No. 69 (internal citations and quotation marks omitted) (quoting Pls. Req. Produc. Dos. ¶¶ 11, 12, 23, 24) ("Pls.' Mot.").

Defendants do not argue that these requests are overbroad or unduly burdensome; rather, Defendants respond that they need not produce these documents until Plaintiffs define each of their purported trade secrets with reasonable particularity. *See* Defs.' Opp'n *passim*; Defs.' Reply & Opp'n *passim*. Implicitly conceding that Plaintiffs have sufficiently defined all but the secrets purportedly contained in the aerial photographs, Defendants write: "Plaintiffs have persisted in their failure to identify with specificity the precise elements of the labeled photographs that constitute purported trade secrets." Defs.' Reply & Opp'n 1. Defendants identify no other inadequately defined secrets.

Defendants' argument is unpersuasive. As discussed above, the aerial photographs do not involve any of Defendants' own trade secrets. Accordingly, as Judge Majzoub explained in *Dura*, because "Plaintiffs' discovery requests do not require disclosure of Defendant's trade secrets, Defendant should properly respond, or supplement its responses already served, pursuant to the Rules of Civil Procedure." 2008 WL 2064516, at *3. Plaintiffs are entitled to responses to these requests.

**2.**

Regarding the contested interrogatories about Defendants' business practices, Plaintiffs request that Defendants:

- "Describe the nature of the business in which defendants LXEng LLC and LXE Solar, Inc. have been and are engaged and all products and/or services that defendants LXEng LLC and LXE Solar, Inc. provided or provide to customers and/or clients."
- "List (a) all of the current and former customers and/or clients of defendants LXEng LLC and LXE Solar, Inc., and (b) all persons or corporations that Defendants contacted or communicated with about the

-8-

> possibility of becoming a customer and/or client of defendants LXEng LLC and LXE Solar, Inc."
> - "Describe the nature of all business engagements involving Defendants and any current or prospective client or customer that are currently ongoing or are projected to start in the ascertainable future."

Pls.' Mot. 3 (internal citations omitted) (quoting Pls.' Interrog. ¶¶ 2–4). Defendants respond that these interrogatories seek irrelevant information, explaining: "No reason exists why Defendants should be compelled to produce agreements, proposals and/or other communications with customers or potential customers that do not mention or refer to Plaintiffs in any manner." Defs.' Opp'n Pls.' Mot. Compel 6, ECF No. 76 ("Defs.' Opp'n"). Plaintiffs reply that the information sought is relevant to their trade secret claims, contending: "To assess both liability and damages on their trade-secret misappropriation claims, plaintiffs must understand whether defendants are still selling [fluid bed reactor] technology packages to customers, the precise nature of their current [fluid bed reactor] technology packages, and the identity of any current and potential customers." Pls.' Reply 4–5. Plaintiffs elaborate: "Plaintiffs do not seek information about products or services marketed or sold by defendants to the extent that it does not involve [fluid bed reactor] technology or the processes or layout of plaintiffs' [trichlorosilane] production train." *Id.* at 5.

Plaintiffs' argument is persuasive. Defendants need not expressly inform potential customers that Defendants were utilizing another company's trade secrets to, in fact, do just that (i.e., misappropriate trade secrets). Indeed, informing prospective customers of such a fact may dissuade, rather than persuade, them to do business with Defendants. Some risk-averse customers, for example, may prefer not to purchase technology that has a larger than normal risk of litigation associated with it. Because Defendants' relevancy objection is unpersuasive, Plaintiffs are entitled to this information.

**C.**

Finally, Plaintiffs seek to conduct discovery on Mr. Little's laptop. Defendants respond that the "delay is entirely the fault of Plaintiffs who have not defined their alleged trade secrets with specificity." Defs.' Opp'n 5. For the reasons discussed above, Defendants' argument is unpersuasive. Defendants further assert that, "[w]hile it is true that Defendants have no other objection to Plaintiffs searching the entire laptop, the Estate of Michael Little ("Little Estate") does object to discovery of the entire laptop." *Id*. Defendants, however, do not have standing to assert an objection on behalf of the Little Estate. Plaintiffs are entitled to this information from Defendants as well.

**D.**

Plaintiffs' motion to compel will be granted.

**III.**

Defendants, in their motion, seek to compel disclosure of the trade secrets that Plaintiffs contend are contained in the "labeled photographs that show details of the location of various processes known to Little." Pls.' Resp. Interrog. 1, *attached as* Defs.' Mot. Ex. 2 (internal alterations omitted). Additionally, Defendants seek disclosure of information that related to Plaintiffs communications with the FBI. Each is discussed in turn.

**A.**

A "trade secret" under Michigan law is that which "consists of any valuable formula, pattern, device, process, or other information that is used in one's business and gives the possessor a competitive advantage over those who do not know or use the information." *Rothschild v. Ford Motor Co.*, 2 F. Supp. 2d 941, 950 (E.D. Mich. 1998). "A plaintiff in a trade

secrets case bears the burden of pleading and proving the specific nature of the trade secrets." *Wilson v. Continental Dev. Co.*, 112 F. Supp. 2d 648, 662 (W.D. Mich. 1999). "Until the defendant knows what information is at issue, it cannot attempt to rebut the plaintiff's charges of misappropriation." *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).

In *Compuware Corp. v. IBM*, 259 F. Supp. 2d 597 (E.D. Mich. 2002), for example, the plaintiff's complaint alleged "the existence of trade secrets, comprised of its Mainframe Software Tools and underlying source code." *Id*. at 605. The court concluded that although the plaintiff "ha[d] not identified the trade secrets 'clearly, unambiguously, and with specificity,' such is not necessary at the pleading stage. . . . Any further specificity desired by [the defendant] can be achieved through discovery." *Id*. A defendant's power to compel discovery is not unlimited, however. "There is no privilege excepting trade secrets from discovery, but courts must exercise discretion to avoid unnecessary disclosures of such information." *Duro*, 2007 WL 4303294, at *2 (internal quotation marks omitted) (quoting *Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001)).

In this case, Defendants' first interrogatory asks Plaintiffs to "[i]dentify with particularity each trade secret of Plaintiffs that Defendants allegedly misappropriated." Defs.' Interrog. 1, *attached as* Defs.' Mot. Ex A. In pertinent part, Plaintiffs' respond that "Defendants have misappropriated labeled photographs that show details of the location of various processes known to Little." Pls.' Resp. Interrog. 1, *attached as* Defs.' Mot. Ex B (internal alterations omitted) (quoting Pls.' Compl. ¶37).

This response does not identify, much less specify with particularity, what competitive advantage the facilities' layout confers. Likewise, responding to Defendants' motion to compel, Plaintiffs write that in general terms "the labeled photography would make it easier for a

-11-

competitor to reverse engineer a [trichlorosilane] plant." Pls.' Br. Opp'n Defs.' Mot. Compel 6, ECF No. 77 ("Pls.' Opp'n"). Plaintiffs suggest that the configuration of the plant's buildings is not mere coincidence, but they do not specify competitive advantage the facilities' layout confers. Defendants are entitled to a fuller explanation — one which articulates the specific nature of the misappropriated trade secrets, identifying the characteristic of the design that they assert confers a competitive advantage. Plaintiffs need not, as Defendants suggest, produce "design drawings including tolerances (the acceptable degree to which the completed part could deviate from the design dimensions), data and reference points, clearances, pivot points, spring tensions, and specific alloys." Defs' Mot. 6 (quoting *Dura*, 2008 WL 2064516, at *2). Rather, Plaintiffs need only specify with reasonable particularity what, if anything, contained in the aerial photographs constitute trade secrets — that is, the disclosure must be sufficient to put Defendants on actual notice of what the particular proprietary information at issue is.

### B.

Defendants next seek to compel production of documents regarding Plaintiffs' "conversations with the FBI concerning Defendants (Request 2) and memoranda reflecting conversations with the FBI (Request 4)." Defs.' Mot. 8. Defendants further observe that "Plaintiffs did agree to produce non-privileged communications with the FBI (Request 3), but have yet to produce any responsive documents." *Id*. Plaintiffs respond that for each of these requests they "have agreed to produce all non-privileged, responsive documents." Pls.' Opp'n 8. Standing on their attorney-client and work product privilege objections, however, Plaintiffs maintain that they "object to producing internal notes, email, or memoranda that describe conversations with the FBI or discuss the FBI's criminal investigation of defendants . . . . These documents were created at the direction of plaintiffs' counsel to obtain legal advice and in

anticipation of potential litigation against defendants. " *Id*. at 8–9. Defendants reply that Jonathan Molloy, the manager of the Dow Corning Trichlorosilane Process Technology Center, "waived any privilege by testifying about the contents of the FBI documents he reviewed. . . . Defendants are entitled to his notes regarding those documents." Defs.' Reply & Opp'n 4.

"The elements of the attorney-client privilege," the Sixth Circuit instructs, "are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

The work product doctrine "is distinct from and broader than the attorney-client privilege." *Reg'l Airport Auth. Of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986)). First recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947), the doctrine is now codified in Federal Rule of Civil Procedure 26(b), which provides in pertinent part that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Thus, the work product doctrine protects: "(1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; (3) by or for another party or its representative." *In re Prof'ls Direct Ins. Co*., 578 F.3d 432, 438 (6th Cir. 2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 26(b)(3)).

"To determine whether a document has been prepared in anticipation of litigation," the Sixth Circuit explains, "we ask two questions: (1) whether that document was prepared because of a party's subjective anticipation of litigation, as contrasted with ordinary business purpose;

and (2) whether that subjective anticipation was objectively reasonable." *Id*. (internal quotation marks omitted) (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)).

When a privilege is asserted, however, Rule 26 requires the party produce a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed — and do[es] so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

In this case, Defendants seek to compel full responses to three requests for production of documents. Request number 2 seeks "All notes of any conversations with the FBI concerning Defendants." Pls.' Resps. Defs.' Req. Produc. Docs. No. 2, *attached as* Defs. Mot. Ex. 4. Request number 3 seeks "All communications with the FBI concerning Defendants." *Id*. No. 3. And request number 4 seeks "All memoranda reflecting any communications with the FBI concerning Defendants." *Id*. No. 4.

Because request numbers 2 and 4 seek information prepared in anticipation of this litigation, this information is protected by the work product doctrine. In March 2008, Dow Corning's counsel wrote a letter to LXEng, expressing concern that Mr. Little may have shared Dow Corning's trade secrets with LXEng. In July 2008, Dr. Xiao formed LXE Solar, placing the new company's assets in a bank account in the Republic of Seychelles. In August, the government of Seychelles froze the LXE Solar account and alerted U.S. authorities. The FBI began a criminal investigation. Sometime later, the FBI contacted Dow Corning and invited them to view the documents suspected of containing Dow Corning's trade secrets. As illustrated by the March 2008 letter, Plaintiffs knew the litigation was a distinct possibility several months before being contacted by the FBI. Moreover, Defendants have previously argued that in anticipation of this litigation, "Plaintiffs conspired with the FBI to provide Plaintiffs access to

-14-

Defendants' trade secrets." Defs.' Opp'n Pls.' Mot. to Dismiss Countercl. 8, ECF No. 56. Thus, Plaintiffs anticipated litigation at the time they communicated with the FBI, and Plaintiffs' expectation was objectively reasonable. Accordingly, Plaintiffs have alleged a sufficient predicate for asserting the work product privilege regarding the information sought in request numbers 2 and 4, "notes of any conversations with the FBI concerning Defendants" and "memoranda reflecting any communications with the FBI concerning Defendants."

Moreover, Molloy did not waive the privilege when he "testif[ied] about the contents of the FBI documents." Defs.' Reply & Opp'n 4. The contents of documents that the FBI prepared are not privileged, of course, but notes and memoranda that Molloy created based on his conversations with the FBI are subject to the work product privilege. Thus, Defendants are not correct that "Defendants are entitled to his notes regarding those documents."

Although Plaintiffs need not produce these documents — or, indeed, any of the privileged documents they must produce a privilege log for the withheld documents.

Likewise, Plaintiffs have agreed to produce information in response to request number 3 (communications with the FBI concerning Defendants), but have not done so yet. They must.

### C.

Finally, Defendants seek expenses pursuant to Federal Rule of Civil Procedure 37. Paragraph (a)(5) provides that when a court grants a motion to compel, the court "must" award the moving party expenses, unless, inter alia, "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(ii). A party is " 'substantially justified' if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *JPMorgan Chase Bank v. SDE Bus. Partnering*, No. 09–10554, 2011 WL 452779, at *6 (E.D. Mich. Sept. 29, 2011) (quoting

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Here, Plaintiffs should have more fully defined the alleged trade secrets contained in the aerial photographs and more promptly responded to the requests regarding the FBI communications. However, this is not a case in which no disclosures were made — rather, the parties are disputing the sufficiency of the responses, one on which reasonable people might — in fact, do — disagree. Defendants are not entitled to expenses for bringing this motion.

### D.

Defendants' motion to compel will be granted in part and denied in part.

### IV.

Accordingly, it is **ORDERED** that Plaintiffs' motion to compel (ECF Nos. 69, 70) is **GRANTED**.

It is further **ORDERED** that Defendants shall produce the aerial photographs Mr. Little took of Plaintiffs' facilities, produce Mr. Little's laptop for discovery, respond to document requests relating to their trade secrets, and respond to the interrogatories relating to Defendants' business practices

It is further **ORDERED** that Defendants' motion to compel (ECF Nos. 71, 72) is granted in part and denied in part.

It is further **ORDERED** that Plaintiffs shall state their trade secrets claim regarding the facility with reasonable particularity or abandon the claim, produce the documents requested in Defendants' request for production of document number 3, and produce a privilege log regarding the documents requested in Defendants' requests for production of document numbers 2 and 4.

It is further **ORDERED** that Plaintiff's motions to expedite (ECF Nos. 65, 67) are **DENIED AS MOOT**.

It is further **ORDERED** that the hearing scheduled for December 22, 2011, at 11:00 a.m. is **CANCELED** because the parties' papers provide the necessary factual and legal information to decide the motion.  *See* E.D. Mich. L.R. 7.1(f)(2).

Dated: December 22, 2011

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 22, 2011.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS