UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CORNING CORP. et al.,

        Plaintiffs,

v.

        Case Number 11-10008
        Honorable Thomas L. Ludington

JIE XIAO et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT IN PART AND ENTERING DEFAULT AGAINST DEFENDANTS LXE SOLAR, INC.; LXE SOLAR, LTD.; AND HXJ SCIENCE & TECH, INC.**

In federal court, obtaining a default judgment involves two distinct steps. Obtain a default. Then seek default judgment. This case is now at step one.

**I**

**A**

Dow Corning manufactures polysilicon products, including trichlorosilane. In 1960, Dow Corning selected Hemlock, Michigan as the site for its polysilicon plant. About two decades later, Dow Corning formed Hemlock Semiconductor, which manufactures polysilicon using Dow Corning's trichlorosilane. Dow Corning remains the majority shareholder of Hemlock Semiconductor.

Michael Little was employed by Dow Corning for 25 years as a chemical engineer. Involved in the manufacture of trichlorosilane, Mr. Little also served for a time as the leader of the Michigan trichlorosilane facility. He signed several confidentiality agreements promising not to disclose any trade secrets or confidential information of Dow Corning.

Mr. Little left Dow in 2002.  Five years later, Dr. Jie Xiao and Mr. Little formed LXEng, LLC.  Although both gentlemen were chemists, only Mr. Little had expertise in the trichlorosilane and polysilicon industries.  Dr. Xiao had worked in the pharmaceutical industry before joining LXEng.  Each gentleman owned a 50 percent stake in the company.

Shortly after forming LXEng, Plaintiffs allege, Dr. Xiao and Mr. Little disclosed Plaintiffs' trade secrets to prospective customers, including the specifications and characteristics of Plaintiffs' fluid bed reactors.  As a result, Plaintiffs further allege, LXEng secured contracts worth as much as $18.4 million to provide trichlorosilane and polysilicon technology to two foreign companies.  LXEng also entered into negotiations with two other foreign companies for contracts worth as much as $12 million.

Mr. Little died in November 2007 when the single-engine plane he was flying crashed near Gladwin, Michigan.

Five months later, Dow Corning's counsel wrote to LXEng.  Expressing concern that Mr. Little may have shared Dow's trade secrets with LXEng's customers, counsel emphasized Dow's intent to protect its intellectual property rights and asked LXEng to consent to an inspection of Mr. Little's laptop computer.  LXEng refused to consent to the inspection.

Around this time, Dr. Xiao was approached by Woongjin Polysilicon Co., Ltd.  Dr. Xiao then formed LXE Solar, Inc. in the Caribbean nation of Nevis "[t]o keep this new contract free of any possible liabilities of LXEng caused by Michael Little."  Defs.' Third-Party Compl. ¶ 7.  Dr. Xiao is LXE Solar, Inc.'s only shareholder.

Less than a month after LXE Solar's formation, it secured a $10 million contract with Woongjin.  Dr. Xiao placed the funds in a bank account in the Republic of Seychelles.

The Seychelles government froze LXE Solar's account and alerted U.S. authorities. The FBI began a criminal investigation and a grand jury empanelled in the Southern District of Florida issued subpoenas for documents and electronic information held by Dr. Xiao, LXEng, and LXE Solar, Inc.

The FBI contacted Dow Corning and invited them to view the documents suspected of containing Dow Corning's trade secrets. Eventually, the Seychelles account was released. The grand jury did not indict Dr. Xiao, LXEng, or LXE Solar, Inc.

## B

On January 3, 2011, Plaintiffs filed a complaint in this Court against Dr. Xiao, LXEng, and LXE Solar, Inc. ECF No. 1. The claims included misappropriation of trade secrets under Michigan law; trademark infringement in violation of the Lanham Act; false advertising, false representation, and unfair competition in violation of the Lanham Act; trademark dilution in violation of the Lanham Act; unfair competition in violation of Michigan law; violations of the Michigan Uniform Trade Practices Act; and tortious interference with contract.

Dr. Xiao, LXEng, and LXE Solar, Inc. moved to dismiss. Granting the motion in part and denying it in part, the Court dismissed Plaintiffs' trademark claims and Michigan Consumer Protection Act claims, but permitted the trade secret, false advertising, unfair competition, and tortious interference claims to proceed. *Dow Corning v. Xiao*, 101 U.S.P.Q.2d (BNA) 1802 (E.D. Mich. 2011).

Dr. Xiao, LXEng, and LXE Solar, Inc. also filed a counterclaim against Plaintiffs and a third-party complaint against Mr. Little's widow, Kathy Little. Plaintiffs and Mrs. Little moved to dismiss the counterclaim and third-party complaint. Their motions were granted. *Dow Corning Corp. v. Xiao*, 11-10008-BC, 2011 WL 4360082 (E.D. Mich. Sept. 19, 2011).

The parties proceeded to engage in vigorous discovery, including several motions to compel. *See, e.g.*, *Dow Corning v. Xiao*, 11-10008-BC, 2011 WL 6739403 (E.D. Mich. Dec. 22, 2011) (addressing cross-motions to compel); *Dow Corning v. Xiao*, 283 F.R.D. 353 (E.D. Mich. 2012) (addressing Defendants' motion to compel).

In April 2012, Plaintiffs deposed Dr. Xiao and learned that he had formed two other companies: LXE Solar Ltd. (formed in the British Virgin Islands); and HXJ Science & Tech, Inc. (formed in China). Dr. Xiao is (or was) the sole owner of the two companies.

In June 2012, Plaintiffs moved for leave to join these two entities as defendants and to amend the complaint. ECF No. 135. Defendants, acknowledging that the two companies were alter egos of Dr. Xiao, consented to the joinder. ECF No. 139. But Defendants opposed a proposed false advertising claim against HXJ. In September 2012, the motion was granted in part and denied in part. ECF No. 148. Leave to join both entities was granted, but leave to add the false advertising claim against HXJ was denied.[1]

Also in September 2012, the parties filed a joint motion for the appointment of a neutral expert. ECF No. 147. The motion was granted; Dr. Hugo Caram was appointed. ECF No. 149.

The parties also retained their own experts. Plaintiffs retained the services of Dr. Liang-Shih Fan. Defendants retained the services of Mr. Stephen M. Lord.

Plaintiffs moved to exclude the testimony, reports, and opinions of Mr. Lord. In March 2013, the motion was granted in part and denied in part. *Dow Corning Corp. v. Xiao*, 11-10008-BC, 2013 WL 992773 (E.D. Mich. Mar. 13, 2013). The Court excluded Mr. Lord's evidence regarding Plaintiffs' second, fourth, and eighth claimed trade secrets, as well as his legal conclusions regarding each of Plaintiffs' 17 claimed trade secrets.

---

[1] Plaintiffs did not immediately file an amended complaint or serve these two additional defendants. Rather, as discussed below, Plaintiffs filed the amended complaint and served the defendants in June 2013.

**C**

In April 2013, defense counsel moved to withdraw. ECF No. 180. An order was entered on April 25, 2013, granting counsel's motion — conditioned upon the filing of proof on the docket that Defendants had been notified of the contents of the order. ECF No. 181.

The order also required Dr. Xiao to file notice that he had retained counsel or that he intended to proceed pro se on or before May 9, 2013. And it required the remaining Defendants to file notice that they had retained counsel or that they did not intend to contest Plaintiffs' claims on or before May 9, 2013.

Counsel for Defendants promptly filed proof that Defendants had been notified of the contents of the order. ECF No. 182. May 9 then came and went. Docketed notices from Defendants did not.

About a month passed. On June 4, 2013, Plaintiffs requested that the clerk of the court enter default against Defendants. ECF No. 185. The clerk declined. ECF No. 187. The next day Plaintiffs filed the motion for default judgment presently before the Court. ECF No. 189.

About a week later, Plaintiff filed an amended complaint naming HXJ Science and Tech, Inc. and LXE Solar Limited as Defendants. ECF No. 194. Dr. Xiao accepted service of process on behalf of these entities on June 18. ECF Nos. 196, 197.

Proceeding pro se, on June 24 Dr. Xiao filed a notice of appearance. ECF No. 198. No appearances have been entered on behalf of the four corporate defendants.

**D**

The motion for default judgment was scheduled for a hearing on July 30, 2013. The day before the hearing, LXEng filed a Chapter 7 bankruptcy petition in the United States Bankruptcy

Court for the District of Connecticut. ECF No. 206. That filing triggered an automatic stay of the litigation against that entity pursuant to 11 U.S.C. § 362(a)(1).

The day of the hearing, Dr. Xiao filed a Chapter 7 bankruptcy petition in the same court. ECF No. 207. Again, the filing triggered the automatic stay against Dr. Xiao.

The hearing was held as scheduled. Counsel for Plaintiffs appeared and presented Plaintiffs' arguments. No one appeared on behalf of Defendants.

## II

### A

The reasons for permitting default judgments, Wright and Miller observe, "are basically the same now as they were in the early days of English and American practice." 10A Charles Allan Wright et al., *Federal Practice & Procedure* § 2681 (3d ed. 1998); *see generally Thompson v. Wooster*, 114 U.S. 104 (1885) (discussing historical *pro confesso* practice).

The Anglo-American civil litigation system is adversarial.[2] Premised on private parties advancing the case, the process could break down if a party against whom affirmative relief is sought refuses to engage.[3] Default judgment remedies this potential holdout problem:

> [T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. . . . Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy.

---

[2] *See generally* Jeffrey S. Parker, *Daubert's Debut: The Supreme Court, the Economics of Scientific Evidence, and the Adversarial System*, 4 Sup. Ct. Econ. Rev. 1, 56 n.81 (1995) ("The basic bargain made by private litigants with the public is to exchange their adversarially contested case of facts and law, as an input to the law-declaring function, for a peaceful and neutral resolution of their particular dispute. Thus, the public interest in particular cases is slight, but so is the public subsidy to private litigation.").

[3] The flipside of the holdout problem — a party seeking affirmative relief who refuses to prosecute his cause — is addressed not by default judgment, but by dismissal for lack of prosecution. *See, e.g.*, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–32 (1962).

*H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam), *cited with approval in Lutomski v. Panther Valley Coin Exch.*, 653 F.2d 270, 271 (6th Cir. 1981) (describing the decision as "the leading case in the field"); *see also United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983) ("Judgment by default is a drastic step which should be resorted to only in the most extreme cases.").

**B**

Today, the rules regarding default and default judgment are codified in Federal Rule of Civil Procedure 55, which provides:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> > (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk — on the plaintiff's request, with an affidavit showing the amount due — must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> >
> > (2) By the Court. In all other cases, the party must apply to the court for a default judgment.

Fed. R. Civ. P. 55(a)–(b) (emphasis omitted).

Obtaining a default judgment is thus, as noted, a two-step process. *E.g.*, *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Part (a): obtain a default. Part (b): obtain default judgment.

Though arguably inefficient,[4] the two steps must also be performed separately — "entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998); *see, e.g.*, *Ramada Franchise Sys., Inc. v. Baroda Enters., LLC*, 220 F.R.D. 303, 304 (N.D. Ohio 2004) ("An entry of default and a default judgment are distinct events that require separate treatment."); *Bureau of Dangerous Goods, Ltd. v. Hazmat Software, LLC*, 6:11-CV-774-ORL-18, 2011 WL 4375029, at *1 (M.D. Fla. Aug. 30, 2011) ("[T]he law is clear that these two separate steps cannot be combined into one. Rather, the . . . entry of default must precede an application to the district court for entry of default judgment."); *Fowler v. Tyndale Pub. House*, 09-10272, 2009 WL 2488057, at *1 (E.D. Mich. Aug. 12, 2009) (collecting cases); *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 783 (E.D. Tex. 2006); *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006) ("Entry of default must precede an entry of default judgment."); *Fairman v. Hurley*, 373 F. Supp. 2d 227, 231 (W.D.N.Y. 2005) ("Without first obtaining an entry of default, plaintiff cannot obtain a default judgment from this Court."); *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 8–9 (D.D.C. 2004) (noting the "fatal flaw" default judgment motion was that the party had not first obtained default); *see generally* Wright & Miller, *supra*, § 2682 ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").

When a party seeks to jump to the second step without first obtaining the entry of default, as in this case, a court may construe the motion as a request for entry of default. *See, e.g.*, *Dayton Elec. Mfg. Co.*, 140 F.3d at 783. This is what will be done in this case. And for reasons

---

[4] This procedure is only "arguably" inefficient because the front-end savings of expediting the process must be offset against the cost of unwinding a default judgment pursuant to Federal Rule of Civil Procedure 60. The rationale for the separate steps, however, is likely not economic — but policy-based. *See, e.g.*, *Marbly v. Dep't of Treasury*, 22 F. App'x 371, 372 (6th Cir. 2001) (discussing "the strong preference for trial on the merits in federal courts").

detailed below Plaintiff is entitled to the order of default against LXE Solar, Inc.; LXE Solar, Ltd.; and HXJ Science & Tech, Inc. (the case against the two remaining Defendants, as noted, has been stayed by their respective bankruptcy filings).

**1**

As a threshold matter, as noted Rule 55(a) provides that default may be obtained from the clerk — it does not mention obtaining default from the court itself. But as Judge Learned Hand cautions, "There is no surer way to misread any document than to read it literally." *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir. 1944) (Hand, J., concurring). Rule 55(a) is one such document.

Courts have long had the inherent authority to enter default as a sanction. *See, e.g.*, *Smith v. Comm'r*, 926 F.2d 1470, 1475 (6th Cir. 1991) ("It is well established that courts have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice."); *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986) (noting that "a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default").

Thus, "Although the Rule refers only to the clerk's entry of default, it is undisputed that the court may impose a default as a sanction." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 917 n.11 (3d Cir. 1992); *see generally* Wright & Miller, *supra*, § 2682 ("The fact that Rule 55(a) gives the clerk authority to enter a default is not a limitation on the power of the court to do so.").

Here, Plaintiffs directing their request to this Court rather than the clerk is appropriate. The issue is whether they are entitled to the relief sought.

**2**

The most common type of default occurs after a defendant does not respond to the complaint by answering or moving to dismiss. *See Brock*, 786 F.2d at 64 (noting that "the typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer"); *see also Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1360 (N.D. Ga. 2011) ("When Defendant failed to file its answer, Plaintiff, with the Court's prompting, sought and was granted an entry of default.").

But default can also be entered against a defendant who did not "otherwise defend." Fed. R. Civ. P. 55(a). In *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305 (2d Cir. 1991), for example, the court of appeals affirmed the entry of default against "a recalcitrant party who failed to comply with its order to obtain counsel." *Id.* at 1310. The court explained: "Such cavalier disregard for a court order is a failure, under Rule 55(a), to otherwise defend as provided by these rules." *Id.* (quotation marks omitted) (quoting *Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir.1967) (per curiam)). Similarly, in *Shapiro* the court of appeals reversed the district court's refusal to grant default judgment where the corporate defendant had not complied with district court's order to secure new counsel after withdrawal of original counsel. 386 F.2d at 427.[5]

**a**

Here, two defendants — LXE Solar Ltd. and HXJ Science and Tech, Inc. — were served with the amended complaint on June 18. Under Rule 12, these entities had 21 days to file a

---

[5] Plaintiffs, to their credit, note that one court of appeals has concluded that Rule 55(a) does not permit the entry of a default against a party who files an answer but then does not appear at trial. *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949), cited in Pl.'s Mot. for Default J. 9. The Fifth Circuit is in the minority on this issue. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 131 (2d Cir. 2011) (collecting cases). And district courts within the Sixth Circuit have declined to extend the Fifth Circuit's rule to this circuit. *GCIU-Emp'r Ret. Fund v. Amerigraph*, No. 2:06-cv-1072, 2008 WL 762082, at *2 (S.D. Ohio Mar. 20, 2008).

responsive pleading. Fed. R. Civ. P. 12(a)(1)(A)(i). The day of the event that triggers the period is excluded from the computation. Fed. R. Civ. P. 6(a)(1)(A). Accordingly, their deadline for answering or otherwise responding was July 10.

That day has come and gone. They have not answered or otherwise responded. They are in default.

### b

One other defendant — LXE Solar, Inc. — did answer and otherwise defend . . . until April 2013. Since then, however, that entity has been entirely unresponsive.

For example, it was ordered to file notice on the Court's docket on or before May 9 that it had retained counsel or did not intend to contest Plaintiffs' claims. That day has come and gone. No notice has been filed and no attorney has entered an appearance on behalf of LXE Solar, Inc. And this entity has taken no other action in this case. Its recalcitrance renders LXE Solar, Inc. in default.

### III

Accordingly, it is **ORDERED** that Plaintiffs' motion for default judgment (ECF No. 189) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that default is entered against Defendants LXE Solar, Inc.; LXE Solar, Ltd.; and HXJ Science & Tech, Inc.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: August 7, 2013

-12-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 7, 2013
                    s/Tracy A. Jacobs
                    TRACY A. JACOBS

1:11-cv-10008-TLL-CEB   Doc # 208   Filed 08/07/13   Pg 12 of 12   Pg ID 5056